**UNITED ASSOCIATION OF JOUR-NEYMEN AND APPRENTICES OF THE PLUMBING AND PIPEFIT-TING INDUSTRY OF THE UNITED STATES AND CANADA, AFL—CIO, LOCAL NO. 525**

and

**Trustees of the Plumbers and Pipefitters Union Local No. 525 Health and Welfare Trust and Plan; and Trustees of the Plumbers and Pipefitters Union Local 525 Pension Plan, Plaintiffs,**

v.

**GROVE INC., a Nevada Corporation, Defendant.**

**No. CV–S–99–1580–HDM RLH.**

United States District Court,
D. Nevada.

May 19, 2000.

### ORDER

McKIBBEN, District Judge.

Before the court is Defendant Grove's Motion to Dismiss (# 3) based upon ERISA preemption. Plaintiff Union opposes the motion (# 8) and so do the Trust Funds (# 18), who joined the case pursu-

ant to this Court's Order (# 16). Grove replied to each. (# 10, # 19).

## I.  *Factual Background*

Plaintiff Union originally brought this removed action in state court under NRS 608.150, which holds general contractors liable for the labor-related debts of their subcontractors.[1] In this case, Defendant Grove, Inc. is the general contractor, and P.M. Mechanical, Inc. is the subcontractor. Union employees worked for subcontractor P.M. Mechanical on two projects for which Grove was the general contractor. Both the Union and P.M. Mechanical are signatories to a Master Labor Agreement (MLA) that governs the wages and benefits to be paid by signatory employers to members of signatory unions. The Union alleges that P.M. Mechanical failed to pay vacation pay/savings fund monies to its employees and failed to pay fringe benefits to the appropriate trust funds as required in the MLA. When the Union's demand for payment from P.M. Mechanical produced no results, demand for payment was made to Grove, pursuant to NRS 608.150, as the general contractor. Grove has not paid, and the Union has responded by bringing the instant action.

## II.  *Analysis*

Grove does not argue that it has no obligation to pay under 608.150, but rather that ERISA preempts application of NRS 608.150. Grove contends that the Union is attempting to use NRS 608.150 as a means to enforce the terms of the Plan. Because 29 U.S.C. § 1132 is the exclusive remedy afforded under ERISA, Grove concludes that NRS 608.150 is preempted as an enforcement mechanism that is in addition to, and therefore inconsistent with, ERISA.

Grove's position is not persuasive. The Union is not relying on NRS 608.150 to enforce *the terms of the plan,* rather they are asserting the independent obligation created under the statute.

29 U.S.C. § 1144(a) is ERISA's preemption clause. Except for narrow exceptions, ERISA "shall supersede any and all State laws insofar as they may now or hereafter *relate to* any employee benefit plan...." 29 U.S.C. § 1144(a) (emphasis added). Although the Supreme Court originally gave "relate to" a sweeping construction, it has explicitly narrowed its interpretation. In *New York State Conference of Blue Cross & Blue Shield Plans v. Travelers Ins. Co.,* 514 U.S. 645, 655, 115 S.Ct. 1671, 131 L.Ed.2d 695 (1995), the Court explained: "If 'relate to' were taken to extend to the furthest stretch of its indeterminacy, then for all practical purposes preemption would never run its course, for '[r]eally, universally, relations stop nowhere.'" (citation omitted). *See also California Div. of Labor Standards Enforcement v. Dillingham Constr., N.A., Inc.,* 519 U.S. 316, 335, 117 S.Ct. 832, 136 L.Ed.2d 791 (1997) (Scalia, J., concurring) ("applying the 'relate to' provision according to its terms was a project doomed to failure, since, as many a curbstone philosopher has observed, everything is related to everything else."). Accordingly, the Court concluded that "we have to recognize that our prior attempt to construe the phrase 'relate to' does not give us much help drawing the line here." *Travelers,* 514 U.S. at 655, 115 S.Ct. 1671; *see also De Buono v. NYSA–ILA Med. and Clinical Servs. Fund,* 520 U.S. 806, 812–14, 117 S.Ct. 1747, 138 L.Ed.2d 21 (1997); *Dillingham,* 519 U.S. at 325, 117 S.Ct. 832; *Emard v. Hughes Aircraft Co.,* 153 F.3d 949, 953 (9th Cir.1998) ("Recently, 'the Court has come to recognize that ERISA preemption must have limits when it enters areas traditionally left to state regulation.'") (collecting cases); *Bast v. Prudential Ins. Co. of Am.,* 150 F.3d 1003,

---

1.  NRS 608.150 provides:
    Every original contractor making or taking any contract in this state for the erection, construction, alteration or repair of any building or structure, or other work, shall assume and is liable for the indebtedness for labor incurred by any subcontractor or any contractors acting under, by or for the original contractor ...
    Nev.Rev.Stat. § 608.150.

1007 (9th Cir.1998); *Graham v. Balcor Co.,* 146 F.3d 1052, 1054 (9th Cir.1998).

■ Under *Travelers,* then, the starting point for preemption analysis under ERISA is the principle that in fields of traditional state regulation, Congress is not assumed to supercede state law absent a showing of clear intent to do so. *See De Buono,* 520 U.S. at 813–14 & n. 8, 117 S.Ct. 1747; *Dillingham,* 519 U.S. at 325, 117 S.Ct. 832; *Travelers,* 514 U.S. at 655, 115 S.Ct. 1671. NRS 608.150 operates in an area of traditional state regulation: "enforcing rights and obligations arising by contract, pursuant to state law, for the protection of the public." *Operating Eng'rs Health and Welfare Trust Fund v. JWJ Contracting Co.,* 135 F.3d 671, 678 (9th Cir.1998).

■ In this context, the Court prescribes a two-part preemption test. A law "relates to" a covered employee benefit plan if it (1) has reference to, or (2) has a connection with such a plan. *See Dillingham Constr.,* 519 U.S. at 324, 117 S.Ct. 832; *District of Columbia v. Greater Wash. Bd. of Trade,* 506 U.S. 125, 129, 113 S.Ct. 580, 121 L.Ed.2d 513 (1992); *Shaw v. Delta Air Lines, Inc.,* 463 U.S. 85, 96–97, 103 S.Ct. 2890, 77 L.Ed.2d 490 (1983); *see also Blue Cross of Cal. v. Anesthesia Care Assoc. Med. Group,* 187 F.3d 1045, 1052 (9th Cir.1999).

NRS 608.150 does not "refer to" employee benefit plans. It neither specifically refers to such plans, *see Greater Wash.,* 506 U.S. at 130–31, 113 S.Ct. 580; *Mackey v. Lanier Collection Agency & Service, Inc.,* 486 U.S. 825, 828–29 & n. 2, 108 S.Ct. 2182, 100 L.Ed.2d 836 (1988), nor is it premised on the existence of such plans, *see Ingersoll–Rand Co. v. McClendon,* 498 U.S. 133, 140, 111 S.Ct. 478, 112 L.Ed.2d 474 (1990).

■ As to whether a state law has a "connection with" such a plan, the Ninth Circuit analyzes the following four factors: (1) whether the state law regulates the types of benefits of ERISA employee welfare benefit plans;

(2) whether the state law requires the establishment of a separate employee benefit plan to comply with the law; (3) whether the state law imposes reporting, disclosure, funding, or vesting requirements for ERISA plans; and (4) whether the state law regulates certain ERISA relationships, including the relationships between an ERISA plan and employer and, to the extent an employee benefit plan is involved, between the employer and employee.

*McBride v. PLM Int'l, Inc.,* 179 F.3d 737, 745 (9th Cir.1999) (quoting *JWJ,* 135 F.3d at 678).

Here these four factors are not implicated because NRS 608.150 simply imposes liability on all general contractors for the labor-related debts of their subcontractors irrespective of the existence of an ERISA plan. NRS 608.150 does not regulate the types of benefits of ERISA employee benefit plans. It does not require the establishment of a plan in order to comply with its mandate. And it imposes no reporting, disclosure, funding, or vesting requirements for ERISA plans. Finally, it does not regulate ERISA relationships.

While it is true that, in this particular case, a plan is involved, NRS 608.150 does not regulate any ERISA relationships. It regulates the relationship between general contractors and subcontractors. While the subcontractor here is an ERISA employer, the obligation imposed by NRS 608.150 has nothing to do with that employer's plan. It does not impose additional obligations on the employer. It does not afford greater benefits to the employee. It simply imposes liability on an entity who, as far as the plan is concerned, is an outsider. This obligation is imposed on all general contractors with respect to all projects and has nothing to do with the existence of an ERISA plan.

Moreover, the Supreme Court instructs that courts analyzing whether a state law is preempted by ERISA must "go beyond the unhelpful text ... and look instead to the objectives of the ERISA statute as a

guide to the scope of the state law that Congress understood would survive." *Travelers*, 514 U.S. at 656, 115 S.Ct. 1671. "Congress intended ERISA to [1] promote employee's [sic] (and their beneficiaries') interests and [2] eliminate conflicting or inconsistent state and local regulations of employee benefit plans." *JWJ*, 135 F.3d at 678 (numbers added). NRS 608.150 promotes employees' interests by essentially turning general contractors into sureties for the labor-related debts of their subcontractors. At the same time, NRS 608.150 is not a conflicting or inconsistent state regulation *of employee benefit plans* because it has no effect on the plan itself, the employer, or the beneficiaries. The only effect is on an ERISA outsider, the general contractor.

■ Nevertheless Grove asserts that the exact issue before this court was already decided in its favor in *Trustees of Electrical Workers Health and Welfare Trust v. Marjo*, 988 F.2d 865, 867 (9th Cir.1992), which held NRS 608.150 preempted by ERISA. If the expansive interpretation of federal preemption described in *Marjo* were still good law the court would agree; however, *Marjo* was a pre-*Travelers* opinion. In applying the Supreme Court's more recent pronouncement of the scope of ERISA preemption, this court is persuaded that NRS 608.150 does not provide additional rights to participants in employee benefit plans, does not conflict with federal regulation of employee benefit plans, and does not hinder the interests of those who use the plan. *JWJ*, 135 F.3d at 679.

The conclusion reached in this opinion satisfies the intentions of Congress. Allowing the Union to avail itself of the generally applicable NRS 608.150 serves to "promote employee's [sic] (and their beneficiaries') interests." *Id.* at 678. And, because general contractors are ERISA outsiders, NRS 608.150 does not interfere with Congress's intent to "eliminate conflicting or inconsistent state and local regulation *of employee benefit plans.*" *Id.* (emphasis added).

As the Ninth Circuit explained in *JWJ* in distinguishing the pre-*Travelers* case *Marjo*:

> Perhaps more importantly, however, this court decided both *Marjo* and *Tri Capital* before *Travelers*. If the breadth of federal pre-emption described in *Marjo* and *Tri Capital* were still good law, [appellee] would probably prevail. However, these cases rely on expansive language from the Supreme Court demonstrating an understanding of ERISA pre-emption that has since been tailored to better fit Congress's policy intentions.

*JWJ*, 135 F.3d at 679.

In conclusion, NRS 608.150 falls under the Supreme Court's directive that "[p]reemption does not occur, however, if the state law has only a 'tenuous, remote, or peripheral' connection with covered plans, as is the case with many laws of general applicability." *Greater Wash.*, 506 U.S. 125, 130 n. 1, 113 S.Ct. 580.

### III. *Conclusion*

Accordingly, Grove's motion to dismiss is denied.

It is so ORDERED.