247 F.3d 920 (9th Cir. 2001)
 SOUTHERN CALIFORNIA IBEW-NECA TRUST FUNDS; BARRY MEYER; DAN SELLERS;RICHARD RIZOTTO, Plaintiffs-Appellees,
v.
STANDARD INDUSTRIAL ELECTRIC COMPANY; PHYLLIS M. STROUT, Defendants,
and
RELIANCE INSURANCE COMPANY, Defendant-Appellant.
SOUTHERN CALIFORNIA IBEW-NECA TRUST FUNDS; BARRY MEYER; DAN SELLERS; RICHARD RIZOTTO, Plaintiffs-Appellees,
v.
STANDARD INDUSTRIAL ELECTRIC COMPANY; PHYLLIS M. STROUT; RELIANCE INSURANCE COMPANY, Defendants,
FIDELITY AND DEPOSIT COMPANY OF MARYLAND;UNITED STATES FIDELITY & GUARANTY COMPANY, Defendants-Appellants.
SOUTHERN CALIFORNIA IBEW-NECA TRUST FUNDS; BARRY MEYER; DAN SELLERS; RICHARD RIZOTTO, Plaintiffs-Appellees-Cross-Appellants,
v.
STANDARD INDUSTRIAL ELECTRICAL COMPANY; PHYLLIS M. STROUT, Defendants,
RELIANCE INSURANCE COMPANY; FIDELITY AND DEPOSIT COMPANY OF MARYLAND; UNITED STATES FIDELITY & GUARANTY COMPANY; KING/DREW HIGH SCHOOL BUILDERS, a California Joint Venture, Defendants-Appellants-Cross-Appellees.
 Nos. 99-55805, 99-55835, 99-55954
 UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT
 Argued and Submitted Oct. 4, 2000
Filed April 18, 2001
 
 Benjamin A. Johnson, San Mateo, California, and Cyrus K. Ipkatchi, San Mateo, for the appellants.
 J. David Sachman, Los Angeles, California, for the appellees/cross-appellants.
 Appeal from the United States District Court for the Central District of California; Mariana R. Pfaelzer, District Judge,Presiding. D.C. Nos. CV-97-09131-MRP, CV-97-09131-MRP-JG, CV-97-09131-MRP-03.
 Before: Diarmuid F. O'Scannlain, Ferdinand F. Fernandez and Johnnie B. Rawlinson, Circuit Judges. Opinion by Judge Rawlinson.
 RAWLINSON, Circuit Judge:
 
 
 1
 Barry Meyer, Dan Sellers, Richard Rizotto ("Employees"), and Southern California IBEW-NECA Trust Funds ("Trusts"), the administrators of several employee benefit plans associated with unions which represent employees,[1] are seeking to collect money owed for work performed on a public construction project using California's stop notice and payment bond remedies. The district court found ERISA preempted the stop notice claim but not the payment bond claim. Both parties appeal. Because neither remedy is preempted by ERISA, we reverse the judgment below as to the stop notice claim, affirm the judgment as to the payment bond remedy, and remand.
 
 BACKGROUND
 
 2
 In July 1996, the Los Angeles Unified School District ("LAUSD") hired King/Drew High School Builders ("KDB") as the general contractor for a public construction project (hereafter referred to as "the project"). KDB subcontracted with SSI Joint Venture ("SSI"), which is composed of Standard Industrial Electric Co. ("Standard") and SASCO Electric ("SASCO"), to perform the electrical work. For labor, Standard signed a collective bargaining agreement ("CBA") with Local Union No. 11 of the International Brotherhood of Electrical Workers. That agreement sets the rates of compensation for employees covered by the CBA, with a portion of the employee's compensation to be paid in the form of contributions to benefit plan Trusts.
 
 
 3
 As required by California law,[2] KDB, the general contractor, posted a payment bond to guarantee payment of all labor and materials on the project. This bond (hereafter" Fidelity Bond") was issued by Fidelity and Deposit Company of Maryland and Fidelity and Guarantee Company ("Fidelity"). As the general contractor, KDB then required SSI, a subcontractor, to post a bond to indemnify the general contractor in the event of any default by the subcontractors on the project. The bond posted by SSI (hereafter "Reliance Bond") was issued by Reliance Insurance Company.[3]
 
 
 4
 During the course of construction, Standard became delinquent in its contributions to the Trusts in the amount of $221,603.98. After Standard defaulted on an agreement and confession of judgment whereby it agreed to pay its delinquent contributions over time, Trusts, as assignee of the employees,[4] served a stop notice on LAUSD for the amount of the delinquent contributions, plus legal fees and costs pursuant to Cal. Civ. Code 3181 (West 1993). At the same time, Trusts made a claim on the Fidelity and Reliance Bonds for the same amount. Both Sureties denied the bond claims.
 
 
 5
 Trusts and Employees brought an action in the United States District Court for the Central District of California to collect the delinquent contributions pursuant to Section 515 of the Employment Retirement Income Security Act ("ERISA"), 29 U.S.C. 1145 (1999). In addition to the ERISA claim, Trusts and Employees' First Amended Complaint also included state law causes of action to enforce the stop notice and payment bonds.[5] LAUSD, KDB, and the Sureties all brought motions to dismiss the stop notice and payment bond causes of action on the ground that California's stop notice and payment bond remedies were preempted by ERISA.
 
 
 6
 The district court found that the stop notice claim was preempted by ERISA, following Carpenters Health and Welfare Trust for California v. Tri-Capital Corp., 25 F.3d 849, 853-54 (9th Cir. 1994), but denied the motion to dismiss as to the payment bond claims, following Operating Engineers Health and Welfare Trust Fund v. JWJ Contracting Corp., 135 F.3d 671 (9th Cir. 1998). Based on this ruling, the parties stipulated to the facts and entry of judgment, and agreed to stay enforcement of the judgment during this appeal. Sureties and KDB each filed timely notices of appeal from the judgment and decision finding the bond claims not to be preempted.
 
 DISCUSSION
 
 7
 We review the district court's interpretation of ERISA preemption de novo. Stewart v. Thorpe Holding Co. Profit Sharing Plan, 207 F.3d 1143, 1148 (9th Cir. 2000).
 
 I. The Payment Bond
 
 8
 Once again, we must determine whether or not ERISA preempts a state law. Our first decision on the issue rejected a claim that ERISA preempted California's payment bond remedy, under the assumption that Congress never intended to supplant certain obligations "fixed by contract and regulated by state law." See Carpenters S. Cal. Admin. Corp. v. D & L Camp Constr. Co., 738 F.2d 999, 1000 (9th Cir. 1984) (concluding no preemption of the obligation of a surety to a plaintiff seeking to enforce a payment bond.) However, subsequent decisions of the Supreme Court placed the validity of this principle in doubt by broadly reading ERISA's literal text, which is deliberately expansive. See Alessi v. Raybestos-Manhattan, Inc., 451 U.S. 504, 523-24, 68 L. Ed. 2d 402, 101 S. Ct. 1895 (1981). Ironically, after we abrogated our rulings in D&L Camp and Carpenters S. Cal. Admin. Corp. v. Majestic Housing[6] to follow the Supreme Court's broad pronouncements regarding ERISA's preemption clause,[7] ERISA's scope was narrowed. See New York State Conference of Blue Cross & Blue Shield Plans v. Travelers Ins. Co. 514 U.S. 645, 131 L. Ed. 2d 695, 115 S. Ct. 1671 (1995). We now proceed to resolve an issue once resolved, guided by principles once held, to make it crystal clear California's payment bond and stop notice remedies are not preempted by ERISA.
 
 
 9
 ERISA preempts and supersedes any and all State laws insofar as they may now or hereafter "relate to "any employee benefit plan. See 29 U.S.C. 1144 (a). Since the Supreme Court narrowed the scope of ERISA preemption in Travelers, the "relates to" criterion has been analyzed by determining whether a state law (1) has a "connection with "or (2) a "reference to" employee benefit plans. See Geweke v. Ford, 130 F.3d 1355, 1357 (9th Cir. 1997); see also District of Columbia v. Greater Washington Board of Trade, 506 U.S. 125, 129, 121 L. Ed. 2d 513, 113 S. Ct. 580 (1992). To find an impermissible connection, we look" both to the objectives of the ERISA statute as a guide to the scope of the state law that Congress understood would survive, as well as to the nature of the effect of the state law on ERISA plans." Rutledge v. Seyfarth, 201 F.3d 1212, 1216 (9th Cir. 2000), amended and superseded on other grounds in 208 F.3d 1170. Most recently, the Supreme Court has held that a Washington state statute that binds ERISA plan administrators to a particular choice of rules for determining beneficiary status has an impermissible "connection with" ERISA, as the statute "implicates an area of core ERISA concern" and jeopardizes national uniformity in plan administration. See Egelhoff v. Egelhoff, U.S. , 121 S. Ct. 1322, 1324-25, L.Ed.2d (2001). A statute has an impermissible "reference to" an employee benefit plan if it acts immediately and exclusively upon the plans or if the plans are essential to the law's operation. Id.
 
 
 10
 For example, in JWJ, we found that Arizona's payment bond remedy was not preempted by ERISA because it did not have a connection with, nor was it related to, an employee benefit plan. 135 F.3d at 679. We found that the payment bond remedy did not require the establishment of a separate benefit plan, and imposed no new reporting, disclosure, funding, or vesting requirements for ERISA plans. Id. Even if we applied the simpler "relates to" analysis used before Travelers,[8] the outcome of JWJ would have remained the same because Arizona's law did not tell employers how to write ERISA benefit plans, nor condition any requirements on how the ERISA benefit plan was written.[9]
 
 
 11
 California's payment bond remedy, Cal. Civ. Code 3249 (West 1993), is no more of an intrusion on ERISA benefit plans than Arizona's payment bond remedy. Similar to Arizona's law, California's statute does not require the establishment of a separate benefit plan, and imposes no new reporting, disclosure, funding, or vesting requirements for ERISA plans. California's statute similarly does not tell employers how to write ERISA benefit plans or how to determine ERISA beneficiary status, and does not condition requirements on how ERISA benefit plans are written.
 
 
 12
 Moreover, California's payment bond statute does not impermissibly "refer" to an employee benefit plan within the meaning of ERISA because it functions irrespective of an ERISA plan. The California legislature could not have intended in 1971 to refer specifically to an ERISA plan; therefore, Cal. Civil Code 3249 will only constitute an impermissible reference if the statute necessarily refers only to ERISA plans, which it fails to do on its face. See California Division of Labor Standards Enforcement, et al. v. Dillingham Construction, N.A., Inc., et al., 519 U.S. 316, 330, 136 L. Ed. 2d 791, 117 S. Ct. 832 (1997). Section 3249 includes by reference mechanics, materialmen, contractors, subcontractors, lessors of equipment, artisans, registered engineers, licensed land surveyors, machinists, builders, teamsters, draymen, and all other persons and laborers among those who may use the payment bond statute to guarantee payment for the value of their labor. California's statute, like Arizona's, allows employees on public-work projects to enforce payment bonds through sureties, regardless of the existence or nature of the ERISA benefit plans. The payment bond statute is not necessarily limited to ERISA plans; thus, its inclusion of employee benefit trusts among those who may enforce a payment bond is not an impermissible reference to an ERISA plan.
 
 
 13
 The Sureties and KDB attempt to distinguish California's payment bond remedy from Arizona's on the asserted basis that an employee benefit trust's use of the payment bond remedy is pursuant to judicial construction while California's statute explicitly includes employee benefit trusts as claimants.[10] One thing about ERISA is clear: if it preempts the inclusion of an employee benefit trust from the class of parties who can enforce a payment bond, it is inconsequential whether that inclusion is by statutory reference or judicial decision. Congress defined a state law subject to ERISA preemption as "all laws, decisions, rules, regulations, or other State action having the effect of law." 29 U.S.C. 1144 (1) (West 1999). If Arizona's statute fell within the cross hairs of ERISA's preemption clause, the fact that it did so by way of a judicial decision instead of a statute would not have saved it.
 
 
 14
 The Sureties and KDB also contend that the reasoning of JWJ is inapplicable to this case because" unlike the general contractor in JWJ, the general contractor in this matter, KDB, did not have a direct relationship with the employee trust funds."[11] As the subcontractor's (SSI's) surety, Reliance is in an analogous position to Continental's surety in JWJ. Reliance's contractual agreement to issue payment bonds merely transferred the obligation from the subcontractor to its underwriter. Similarly, by issuing the payment bond, Fidelity explicitly agreed to act as KDB's surety if KDB or its subcontractors "fail to pay any person or persons named in California Civil Code Section 3110 and 3181." Contrary to the Sureties' and KDB's assertions, Trusts are the intended beneficiaries of both bonds. In sum, the payment bond remedy currently before this Court and the payment bond remedy examined in JWJ do not have any legally cognizable differences.
 
 
 15
 The Sureties and KDB further assert that our opinion in Sturgis v. Herman Miller, Inc., 943 F.2d 1127 (9th Cir. 1991), as well as the decision of the California Supreme Court in Carpenters Southern Cal. Admin. Corp v. El Capitan Development Co., 53 Cal. 3d 1041, 282 Cal. Rptr. 277, 811 P.2d 296 (1991), specifically addressed this issue and determined that Section 3111 is preempted by ERISA. As the analysis of ERISA's preemption has changed in accordance with Travelers, previous cases must be reevaluated in light of Travelers' dictates. To the extent pre-Travelers decisions rely on a view of ERISA's preemption clause which allows the "relate to" language to extend to the furthest stretch of indeterminacy, their continued validity is questionable. See Rutledge, 201 F.3d at 1216 (noting that prior cases using the phrases "clearly expansive, ""broad scope," "expansive sweep," "broadly worded," "deliberately expansive," and "conspicuous for its breadth "have been discredited by more recent Supreme Court decisions limiting the scope of the 'relate to' provision of ERISA).
 
 
 16
 In Sturgis, we held that Section 3111 was preempted by ERISA because it specifically accorded ERISA plans a right to use California's mechanic's lien statute for collecting delinquent contributions. See 943 F.2d at 1130. Following Shaw v. Delta Airlines, Inc., 463 U.S. 85, 97, 77 L. Ed. 2d 490, 103 S. Ct. 2890 (1983), a pre-Travelers case, we ruled that a state law is preempted if it has a "connection with or reference to" an ERISA plan "whatever the state law's underlying intent." See 943 F.2d at 1128-29. Similarly, in Carpenters, the California Supreme Court relied on preTravelers decisions to reach the same result. See 53 Cal. 3d at 1047.
 
 
 17
 In addition to examining whether an employee benefit plan has a "connection with" or "reference to" an ERISA benefit plan, a core inquiry in determining whether a state law claim is preempted is the effect on an ERISA governed relationship.[12] See Rutledge 201 F.3d at 1217-19. To ascertain if a relationship is an ERISA governed relationship, we look to whether ERISA "precisely defines the relationship between plans and parties in interest." Id. at 1221. A state statute will not be preempted if it has a tenuous, remote or peripheral connection with ERISA plans. See District of Columbia, 506 U.S. at 130 n.1. California's payment bond remedy does regulate the relationship between ERISA trust funds and an employer's surety, but the effect of this state regulated relationship on ERISA's domain is too tenuous to precipitate preemption under ERISA. See JWJ, 135 F.3d at 678-79 (finding the relationship between ERISA and a third party guarantor" too tenuous, remote, or peripheral" to trigger ERISA's preemption clause). Because the breadth of ERISA preemption is no longer indefinite, and pre-Travelers decisions must be reevaluated in light of Travelers and JWJ, the decisions cited by Sureties and KDB are unpersuasive. Accordingly, we find ERISA does not preempt Trusts' and Employees' payment bond claims and AFFIRM the district court ruling as to the payment bond claims.
 
 II. The Stop Notice
 
 18
 Sometimes, we must try to resolve disputes in a manner which avoids internal inconsistency. Such is the present case. Under the district court's ruling, enforcement of the payment bond remedy is not preempted by ERISA, but these same claimants' stop notice remedy is preempted. A finding that one remedy does, and the other remedy does not, survive preemption by ERISA would result in irreconcilable differences in the law applicable to remarkably similar legislation.
 
 
 19
 The district court held that ERISA preempted the Trusts' and Employees' stop notice claim, relying on our decision in Tri-Capital. We reverse this portion of the district court's ruling. California's payment bond and stop notice statutes, Cal. Civ. Code 3249 and 3181 respectively, are part of the same integrated statutory scheme.[13] The payment bond remedy, which is based on 3248 (b) refers to the stop notice section, 3181, to define the persons and claims protected by the bond. The stop notice statute which defines those persons and claims, in turn refers to the mechanic's lien sections, 3110 and 3111. Both statutes serve the same purpose; they were added by the California legislature to provide remedies for collection of amounts due persons furnishing labor or supplies on public property. Sunlight Elec. Supply Co. v. McKee, 226 Cal. App. 2d 47, 37 Cal. Rptr. 782, 784 (Cal. Ct. App. 1964).
 
 
 20
 In Trustees of the Electrical Workers Health & Welfare Trust v. Marjo Corp., 988 F.2d 865, 867 (9th Cir. 1993), we interpreted ERISA's preemption clause broadly, in accordance with two pre-Travelers decisions, Pilot Life Ins. Co. v. Dedeaux, 481 U.S. 41, 46, 95 L. Ed. 2d 39, 107 S. Ct. 1549 (1987), and Metropolitan Life Ins. Co. v. Taylor, 481 U.S. 58, 95 L. Ed. 2d 55, 107 S. Ct. 1542 (1987). There, we examined a Nevada statute which extended liability to general contractors for subcontractors' benefit plan contributions. Finding that the enforcement mechanism of the statute supplemented those provided by ERISA, we held that Nevada's statute was" related to" benefit plans within the meaning of ERISA's preemption clause. See Marjo, 988 F.2d at 867.
 
 
 21
 In Carpenters Health v. Tri-Capital, we admittedly read ERISA's preemption clause very broadly, noting that the Supreme Court has recognized that ERISA preemption is "conspicuous for its breadth." See 25 F.3d 849, 853 (9th Cir. 1993) (quoting Ingersoll-Rand Co. v. McClendon, 498 U.S. 133, 138, 112 L. Ed. 2d 474, 111 S. Ct. 478 (1990)). There, we followed the reasoning of Marjo to determine that California's stop notice remedy was preempted on the grounds that it supplemented a remedy already provided by ERISA. See Tri-Capital, 25 F.3d at 854. Nevertheless, the district court reasoned that because we distinguished Tri Capital in JWJ, Tri Capital's analysis of California's stop notice remedy was still good law and conclusively binding on the issue. However, Tri Capital was decided before the Supreme Court changed the focus of ERISA preemption analysis in Travelers. Following the direction of Travelers, our analysis now starts with the "presumption that Congress did not intend ERISA to preempt areas of 'traditional state regulation' that are quite remote from the areas with which ERISA is expressly concerned." See Rutledge, 201 F.3d at 1217. Rather than focusing on the text of the statute, we now look at how it actually operates. See JWJ, 135 F.3d at 677. Like the payment bond remedies in JWJ and this case, California's stop notice statute "regulates an area that Congress has traditionally left to the states: enforcing rights and obligations arising by contract, pursuant to state law, for the protection of the public." Id. at 678. In the final analysis, California's stop notice statute is part of the same integrated scheme as its payment bond remedy and it serves the same purpose. Predictably, our analysis of California's payment bond remedy mirrors our analysis of California's stop notice remedy and neither is preempted by ERISA.
 
 
 22
 While in JWJ we distinguished Tri Capital, we also stated, "Perhaps more importantly, however, this court decided Marjo and Tri Capital before Travelers. If the breadth of federal preemption described in Marjo and Tri Capital were still good law, Continental would probably prevail." Id. at 679. In JWJ we did not make our position clear; let us do so today: the breadth of federal preemption which governed our decisions prior to Travelers is no longer applicable. The previously expansive preemption language prior to Travelers has been "tailored to better fit Congress's policy intentions." See id. To the extent Tri Capital, Marjo, Sturgis, and their progeny decided before Travelers are inconsistent with this holding, they are hereby expressly overruled. See, e.g., Nghiem v. NEC Electronic, Inc., 25 F.3d 1437, 1441 (9th Cir. 1994) (overruling a prior panel's decision which had been undermined by intervening Supreme Court precedent).
 
 CONCLUSION
 
 23
 We find California's payment bond and stop notice remedies are not preempted by ERISA. They do not have an impermissible connection with, nor do they impermissibly relate to, an ERISA benefit plan. Although the remedies could be interpreted as regulating relationships between an ERISA plan and a third party, the relationships are too tenuous, remote, or peripheral to be preempted by ERISA.
 
 
 24
 Accordingly, the district court decision is AFFIRMED as to the payment bond claim and REVERSED as to the stop notice claim. This matter is REMANDED to the district court for further proceedings consistent with this opinion. Each party is to bear its own fees and costs on appeal.
 
 
 
 Notes:
 
 
 [1]
 These plans include Southern California IBEW-NECA Health Trust Fund, Southern California IBEW-NECA Pension Trust Fund, IBEW Local 11 Joint Apprenticeship and Educational Training Trust Fund, National Electric Benefit Fund, and National Electric Industry Fund.
 
 
 [2]
 See Cal. Civ. Code 3247 (West 1993).
 
 
 [3]
 Reliance Insurance Company, Fidelity and Deposit Company of Maryland and Fidelity and Guarantee Company shall hereafter be referred to as "Sureties."
 
 
 [4]
 In addition to the assignment of compensation in the form of benefit contributions contained in the CBA, the employees executed separate written assignments of their stop notice and bond claims to the Trusts.
 
 
 [5]
 A separate judgment in favor of Trusts on the ERISA claim and dismissal of Trusts' sixth cause of action for deprivation of federal rights under color of state law, was not appealed.
 
 
 [6]
 See 743 F.2d 1341, 1345-46 (9th Cir. 1981) (finding no preemption in area of traditional state regulation).
 
 
 [7]
 See Elec. Workers Health & Welfare Trust v. Marjo Corp., 988 F.2d 865, 867-68 (9th Cir. 1993) (reading ERISA broadly to find enforcement mechanism of Nevada statute which permitted action to collect contributions from subcontractors preempted).
 
 
 [8]
 The pre Travelers inquiry asked, "Is the state telling employees how to write their plans, or conditioning some requirement on how they write their plans? Or is it telling them that regardless of how they write their ERISA plans, they must do something else outside and independently of the ERISA plans? If the latter ... there is no preemption." Id. at 679.
 
 
 [9]
 The Arizona payment bond statute required "public-work project employers to issue payment bonds through sureties, regardless of the existence or nature of the ERISA benefit plans." Id.
 
 
 [10]
 Cal. Civ. Code 3249 permits "any stop notice claimant" to bring an action against the surety on a payment bond. (West 1993). Cal. Civ. Code 3181 defines a "stop notice claimant" as "any person mentioned in Civil Code 3110, 3111 or 3112." (West 1993). Cal. Civil Code 3111 defines an express trust for the purposes of the chapter. (West 1993).
 
 
 [11]
 In JWJ, we found that by allowing the trust fund to enforce the payment bond against the surety of the employer, Arizona's law merely substituted obligors which, theoretically, did not expand the remedies provided to the trusts by ERISA. See JWJ, 135 F.3d at 679.
 
 
 [12]
 This Court has identified no fewer than six different tests used since Travelers to determine whether a state statute was preempted by ERISA. All six tests, however, contained a central element of determining whether the state law claim bears on an ERISA governed relationship. Rutledge, 201 F.3d at 1217-19.
 
 
 [13]
 The mechanic's lien sections, Cal. Civil Code 3110 and 3111 are also part of California's integrated statutory scheme. Section 3111, which allows employee benefit trusts to avail themselves of the mechanic's lien, is by incorporation also the section which allows them to avail themselves of the stop notice and payment bond remedies.