Kottmyer, J.
Plaintiff, Atlantic Industrial Services, Inc. (“Atlantic”), brought this action against General Electric Company (“General Electric”) et al., seeking compensation for extra work it performed as a subcontractor on property owned by General Electric. Also named as defendants were the general contractor, Sevenson Environmental Services, Inc. (“Sevenson”), and its surety. In Count Three, Atlantic seeks recovery in quantum meruit from General Electric. General Electric moved for summary judgment, and the court denied that motion, without prejudice. General Electric renewed the motion after taking the deposition of Charles Masterson who was Atlantic’s Project Manager for the work covered by the subcontract. After hearing and based on the summary judgment record, General Electric’s renewed motion for summary judgment is ALLOWED.
BACKGROUND
A. Factual Histoiy.
The facts viewed in the light most favorable to the non-moving party are as follows. General Electric owns real property located in Everett, Massachusetts (the “Site”). General Electric previously operated a manufacturing facility on the Site. A remediation order issued requiring all existing buildings on the Site to be demolished and the Site to be capped.
General Electric retained Industrial Design Corporation (“Industrial”) as its agent. On July 23, 1999, General Electric, through Industrial, entered into a contract with Sevenson to perform demolition activities on the Site (the “Principal Contract”). General Electric agreed to pay Sevenson $1,219,300 for those services.
Article 26.4 of the Principal Contract provides that “Contractor (Sevenson) hereby releases Owner (General Electric), Owner’s Agent, their shareholders, employees and agents from any claim for damages, whether direct, incidental, contingent, special, or consequential, for loss of profits, and for additional or extra compensation or costs on account of any delay, due to Force Majeure or any cause whatsoever.” Article 31 of the Principal Contract further provides that Sevenson is entitled to compensation for extra work performed only if agreed upon between General Electric and Sevenson pursuant to a written change order.
On August 31, 1999, Sevenson entered into a subcontract with Atlantic to perform demolition and debris removal work (the “Subcontract”). In Paragraph 2 of the Subcontract, Atlantic agreed to be bound by the terms and conditions of the Principal Contract which were incorporated by reference in the Subcontract. That paragraph provides, in relevant part: ■
Subcontractor (Atlantic) agrees to be bound by all the terms and conditions of the Principal Contract insofar as each and every part thereof is applicable to the Subcontract Work. Subcontractor expressly assumes toward Contractor (Sevenson) all the obligations and responsibilities applicable to the Subcontract Work which the Contractor assumes toward the Owner (General Electric) in the Principal Contract, and Subcontractor agrees that, in addition to any other rights and remedies afforded Contractor by law, Contractor shall have the same rights and remedies against Subcontractor with respect to the Subcontract Work which the Owner has against Contractor under the Principal Contract, all with the same force and effect as though *131 every obligation, responsibility, right or remedy were set forth herein in full.
. Paragraph 13 of the Subcontract provides in part:
Contractor shall have the right to order additions ... in the work subject to an adjustment in price. No addition or modification shall be made in the Subcontract work . . . nor shall any claim on account thereof be made except upon written order signed by the Contractor prior to the time Subcontractor begins execution of such work.
There was no contract between General Electric and Atlantic.
As work progressed at the Site, Sevenson notified General Electric of additional work that needed to be performed, including additional removal and disposal work due to unanticipated contamination. In addition, additional equipment had to be brought onto the Site to meet the scheduled completion date. Talks between General Electric, Sevenson and Atlantic representatives ensued. Before doing the work, Atlantic told General Electric that it would make a claim and General Electric and Industrial, through their employees, represented to Atlantic that change orders would be issued and “that would filter down from Sevenson to Atlantic.” Atlantic did not expect to receive payment directly from General Electric. General Electric and Sevenson executed written contract amendments specifying the additional compensation Sevenson would receive for the additional work performed at the Site.
Atlantic claims that it relied on General Electric’s representations when it performed additional work and provided additional equipment to the Site. Atlantic now seeks to be compensated by General Electric in quantum meruit.
B. Procedural History.
On March 17, 2000, Atlantic recorded a Notice of Contract with the Middlesex Land Court Registry District (the “Registry District”) pursuant to G.L.c. 254. On April 13, 2000, Atlantic recorded a Sworn Statement of Account at the Registry District. On May 30, 2000, Atlantic filed its complaint seeking recovery on contract and quasi-contract theories and relief pursuant to a mechanic’s lien. On June 7, 2000, Sevenson recorded a bond in the statutorily prescribed form at the Registiy District in the penal sum of $601,285. On September 5, 2000, Atlantic dismissed Count Four of the Complaint asserting a mechanic’s lien. Thereafter, Atlantic amended its complaint to name Sevenson’s surety, Employers Insurance of Wausau, as a defendant.
General Electric then moved for summary judgment on Atlantic’s quantum meruit claim against it. The Court denied the motion without prejudice. General Electric deposed Atlantic’s project manager, Charles Masterson, and renewed its motion for summary judgment.
STANDARD OF REVIEW
A court grants summary judgment where no genuine issue of material fact exists and where the record entitles the moving party to judgment as a matter of law. Cassesso v. Commissioner of Correction, 390 Mass. 419, 422 (1983); Community Nat'l Bank v. Dawes, 369 Mass. 550, 553 (1976); Mass.R.Civ.P. 56(c). A party moving for summary judgment who does not bear the burden of proof at trial may demonstrate the absence of a triable issue either by submitting affirmative evidence negating an essential element of the nonmovmg party’s case or by showing that the nonmoving party has no reasonable expectation of proving an essential element of its case at trial. Kourouvacilis v. General Electric Motors Corp., 410 Mass. 706, 716 (1991). The nonmoving party cannot defeat the motion for summary judgment simply by resting on its “pleadings and mere assertions of disputed facts . . .” Lalonde v. Eissner, 405 Mass. 207, 209 (1989).
Once the party moving for summary judgment has shown that there is no genuine issue of material fact, the burden is then upon the opposing party to respond and allege specific facts showing that there is a triable issue. John B. Deary, Inc. v. Crane. 4 Mass.App.Ct. 719, 722 (1976). A complete failure of proof concerning an essential element of the nonmoving party’s case renders all other facts immaterial. Kourouvacilis, 410 Mass. at 711. When evaluating the merits of the motion, a court must read the summary judgment material in a light most favorable to the nonmovmg party. Blare v. Husky Injection Molding Sys. Boston, Inc., 419 Mass. 437, 438 (1995).
DISCUSSION
General Electric argues that Atlantic may not seek relief directly from it because there was no contract between General Electric and Atlantic. “In the absence of a lien perfected under G.L. 254, an owner who enters into a general contract for improvements on real property is not ordinarily liable to subcontractors whose sole contractual arrangements are with the General Contractor.” Brick Const. Corp. v. CEI Dev. Corp., 46 Mass.App.Ct. 837, 840 (1999), quoting from Superior Glass Co. v. First Bristol County Nat’l Bank, 8 Mass.App.Ct. 356, 359 (1979). In this case, Atlantic recorded a lien under G.L.c. 254. However, Sevenson thereafter recorded a statutory lien bond and effectively dissolved the lien. G.L.c. 254, §14; Chestnut-Adams Ltd. P’ship v. The Bricklayers and Masons Trust Funds of Boston, Massachusetts, 415 Mass. 87, 89 (1993). Given that no lien under G.L.c. 254 remains in place, General Electric is not “ordinarily liable” to Atlantic. See Brick, 46 Mass.App.Ct. at 840. Absent special circumstances, Atlantic must look to Seven-son, “the one to whom credit was extended when the work was done, that is, the one who was expected to pay and who in fact expected to pay or... should have *132 expected to pay,” not to General Electric. See La Chance v. Rigoli, 325 Mass. 425, 427 (1950).
Atlantic urges that this case presents special circumstances that justify deviation from the ordinary rule. Specifically, Atlantic relies heavily on statements made by one of its employees that General Electric directed much of the additional work Atlantic performed at the Site and, in Atlantic’s view, made representations assuring Atlantic that it would receive payment for that additional work. Atlantic continues that it relied on those representations in deciding to undertake the additional work. Based on these facts, Atlantic argues that it is entitled to recovery in quantum meruit.
An action seeking recovery in quantum meruit presupposes that no valid contract exists. Boswell v. Zephyr Lines, Inc., 414 Mass. 241, 250 (1993). Indeed, such an action may lie only where the circumstances require the court to impose a legal obligation on another in the interests of justice. J.A. Sullivan v. Commonwealth, 397 Mass. 789, 793 (1986). To prove entitlement to recovery on this equitable theory, the plaintiff must show that (1) the plaintiff conferred a measurable benefit upon the defendant, (2) the defendant accepted the services with a reasonable expectation of compensating the plaintiff for them, and (3) the plaintiff provided the services with a reasonable expectation of receiving compensation from the defendant. Massachusetts Cash Register, Inc. v. Contrex Sys. Corp., 901 F.Sup. 404, 423 (D.Mass. 1995). In this case no reasonable trier of fact could find that Atlantic provided the additional work at the Site with a reasonable expectation of receiving compensation from General Electric.
At all times relevant to this action, General Electric’s obligations were governed by the terms of the Principal Contract and the Subcontract expressly incorporated the terms and conditions of the Principal Contract. The Principal Contract provides that Seven-son is entitled to compensation for extra work performed only if agreed upon between General Electric and Sevenson pursuant to a written change order. Atlantic’s right to compensation for extra work was governed by the terms of the Subcontract which provides no claim for additional work shall be made in the absence of a written order signed by the Contractor. According to Masterson, Atlantic’s project manager, Atlantic “never" had the understanding that General Electric would pay Atlantic directly. Masterson Dep., pp. 62-63. The summary judgment record, viewed in the light most favorable to Atlantic, establishes only that before doing the work, Atlantic told General Electric that it would make a claim and General Electric and Industrial, through their employees, represented to Atlantic that change orders would be issued and “that would filter down from Sevenson to Atlantic.” It is undisputed that General Electric did issue several change orders relating to the disputed work and that, in accordance with the Principal Contract, the written change orders provided for payment from General Electric to Sevenson.
Given the provisions of the Principal Contract and the Subcontract, Atlantic’s rights to payment for extra work are governed by contract. Moreover, Atlantic has no reasonable expectation of proving an essential element of its claim for recovery against General Electric on a quantum meruit theory— namely, that it provided the additional work with the reasonable expectation that General Electric would compensate it for that work. As a result, General Electric’s renewed motion for summary judgment is ALLOWED.
CONCLUSION
For the foregoing reasons, it is ORDERED that General Electric Company’s renewed motion for summary judgment on Count Three asserting a claim in quantum meruit be and hereby is ALLOWED.